FILED
00 MAR 31 PM 4: 56
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PATRICIA GROVES, | } |
| Plaintiff, | } |
| v. | } CASE NO. CV 98-B-1763-S |
| SECRETARY OF THE TREASURY, Robert E. Rubin, | } |
| Defendant. | } |

ENTERED
APR ≥3 2000

## MEMORANDUM OPINION

This case is before the court on Defendant's Motion for Summary Judgment, filed July 9, 1999. Plaintiff Patricia Groves ("plaintiff" or "Groves") brought this action against Defendant Robert E. Rubin, in his capacity as Secretary of the Treasury and ultimate head of the Internal Revenue Service ("defendant" or "IRS"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be granted.

### I. FACTS

Plaintiff, an African American female, is currently employed as a Grade 12 revenue officer for the IRS in Nashville, Tennessee. (Groves Dep. at 8, attached as Ex. 1 to Pl.'s Evid. Sub.) She has been employed by the IRS since 1974. (*Id.* at 9.) She was assigned to the Birmingham office of the IRS in 1993. (*Id.* at 8.)

15

According to Groves, while she was assigned to the Birmingham IRS office she was denied the opportunity to compete for two promotions: in July or August 1993, a permanent Group Manager position in Montgomery, Alabama, that was filled non-competitively by a white male, (Pl.'s Compl. ¶ 13);[1] and in August, 1994, a Grade 14 Branch Chief position that was awarded non-competitively to Tom Owens ("Owens"), a white male. (*Id.* at ¶ 8; Groves Dep. at 14-16.)

During the relevant period, Charles E. Dietz ("Dietz") was Chief of the Birmingham Collection Division. (Inv. File I at 61.)[2] According to Dietz, in 1994, when a Field Branch Chief position became vacant, he decided to realign the division. (*Id.*) Pursuant to the realignment, Dietz requested a desk audit of the Special Procedures Staff ("SPS") Branch Chief position. (*Id.* at 61-62.) Similar studies had been performed in the past, all of which had indicated that the SPS Branch Chief position should be upgraded from a Grade 13 to a Grade 14 position. (*Id.* at 62.)

According to Position Classification Specialist Catherine L. Young, the authority to upgrade a position from Grade 13 to Grade 14 rests with the IRS's Regional Commissioner. (Inv. File II at 583.) Consequently, on May 6, 1994, Philip J. Sullivan ("Sullivan"), then District Director of the Birmingham District, forwarded a memorandum to the Regional Commissioner requesting that the SPS Branch Chief position be upgraded from Grade 13 to Grade 14. (*Id.* at 585.) In support of this request, Sullivan noted that the vacant Field Branch Chief position

---

[1] Because the court is of the opinion that this claim is untimely and unexhausted, it need not set forth in detail the facts surrounding this promotion.

[2] On July 9, 1999, defendant filed with the court the administrative record of this case. The record consists of three volumes: the administrative file ("Adm. File"); investigative file volume I ("Inv. File I"); and investigative file volume II ("Inv. File II").

2

would not be filled. (*Id.*) On June 21, 1994, the Regional Commissioner approved Sullivan's request. (*Id.* at 584.)

According to Dietz, the person occupying the SPS Chief position (Tom Owens) remained in the position, receiving the upgrade to Grade 14. (Inv. File I. at 62.) In the IRS, "[i]t is an accepted and common personnel practice to upgrade the employee at the time the desk audit is done which upgrades the position." (*Id.*) Were Dietz to upgrade the position and then announce it vacant, "someone else could have been selected leaving the existing [SPS Chief] without a job." (*Id.*) "This would not be an acceptable personnel practice at any grade level." (*Id.*)

Flora James ("James") is an African American female employed by the IRS as an EEO and Diversity/Management Achievement Program ("MAP") Advisor. (Inv. File I at 97.) MAP is a program designed to train and certify permanent managers who wish to advance to higher level positions. (*Id.*) According to James, in November 1994, MAP was revamped and changes were made to the selection/certification process. Subsequently, eight collection managers participated in the program, with three being certified. (*Id.*) The certified managers were Charles King, Norman Sanderson, and Owens, all white males. (*Id.*) The record is not clear whether any females or minorities were ever certified, although James states that "the females and black male participants were not readily certified." (*Id.*)

Plaintiff alleges instances where she was treated differently from white male counterparts. She alleges that she was continuously criticized by management for giving high performance ratings and for the performance of her group, (Compl. ¶ 9); she was not allowed flex-time to work outside her office, (*id.* at first ¶ 10); she received less preferential assignments than white male managers, (*id.* at second ¶ 10); she was required to submit performance evaluations with

3

employee performance files, (*id.* at ¶ 11); the white male branch chief did not share pertinent information with her, (*id.* at ¶ 12); she was required to regularly attend and complete Equal Employment Opportunity training, (*id.* at ¶ 15); in March 1994, a branch chief discussed plaintiff's performance with her group members outside of her presence (*id.* at ¶ 14) and she suffered from unspecified "discriminatory employment actions and breaches of IRS policy," (*id.* at ¶ 16).

Plaintiff alleges that these acts, as well as the denial of promotion opportunities, constitute violations of Title VII either (1) singly as discrete acts of disparate treatment; or (2) collectively as a hostile work environment. (*Id.* at ¶¶ 17-29.)

On October 6, 1994, plaintiff contacted an EEO counselor to complain about this alleged discrimination. (*Id.* at ¶ 6.) On February 16, 1995, plaintiff filed a formal complaint of employment discrimination with the Department of the Treasury. (*Id.*) On May 25, 1995, defendant informed plaintiff that it had accepted the following issues for investigation:

> 1. Whether you were subjected to discrimination by management based on your race (African American) and sex (female) when:
>
>    a. on or about October 20, 1994, management did not properly inform you of the correct review schedule to follow;
>
>    b. on or about August 31, 1994, you were granted the opportunity to act for 3 days, however, denied an extended period as your peer white managers;
>
>    c. on or about August 30, 1994, you were not allowed to compete for the GS-14, SPS Branch Chief position; and

        d. on or about August 26, 1994, you were required to submit to your Branch Chief Employee Personnel Files (EPF) together with two evaluations of your subordinates.

    2.    Whether you have been harassed based on your race (African American) and sex (female) when:

        a. in September 1994, your Branch Chief did not attend Equal Employment Opportunity (EEO) sessions during the Heritage Awareness Week in your post of duty in Birmingham, Alabama;

        b. on September 16, 1994, your Branch Chief expressed concern about your group's performance; and

        c. on or about August 24, 1994, you were questioned about your work outside the office.

(Inv. File I at 31-32.)

        On May 25, 1995, defendant also issued a partial Final Agency Decision dismissing two issues raised in plaintiff's February 16, 1994, administrative complaint due to untimely contact with the EEO counselor. (Adm. File at *1.)[3] The dismissed matters were the 1993 Group Manager promotion and the March 1994 incident where a branch chief discussed plaintiff's performance with her group members outside of her presence. (*Id.*) Plaintiff filed this lawsuit on July 8, 1998, prior to the issuance of a Final Agency Decision on the merits of the timely raised issues, but after 180 days had passed from the filing of the initial charge with the Department.

---

[3] The administrative file does not have numbered pages, thus relevant excerpts are marked with starred tabs.

## II. DISCUSSION

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### B. Administrative Exhaustion

Defendant moves for summary judgment on three of plaintiff's allegations on the grounds that plaintiff did not exhaust her administrative remedies. Federal employees have 45 days after

the alleged discriminatory act to contact an equal opportunity counselor. 29 C.F.R. § 1614.105(a). The applicable regulation states:

> An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105(a)(1).

Exhaustion of administrative remedies is a prerequisite for federal employees filing discrimination claims. *Brown v. General Services Administration*, 425 U.S. 820, 832 (1976); *Grier v. Secretary of the Army*, 799 F.2d 721, 724 (11th Cir. 1986). Administrative exhaustion "is not a technicality." *Grier*, 799 F 2d. at 724. Dismissal or summary judgment is appropriate in cases where a plaintiff has failed to raise an administrative discrimination complaint in a timely manner. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 148-52 (1984) (per curiam); *Manning v. Carlin*, 786 F.2d 1108, 1109 (11th Cir. 1986).

In this case, plaintiff, however, complains about discriminatory acts not covered by the administrative investigation: (1) in July or August 1993, she was denied the opportunity to compete for a promotion to permanent group manager, (Compl. ¶ 13); (2) the branch chief discussed plaintiff's performance with her group members outside of her presence (*id.* at ¶ 14); and (3) she suffered from unspecified "discriminatory employment actions and breaches of IRS policy," (*id.* at ¶ 16).

Plaintiff did not initiate contact with an EEO counselor within 45 days of the effective date of the discriminatory acts alleged in paragraphs 13 and 14 of plaintiff's complaint. (Adm. File at *1.) The unspecified breaches of IRS policy contained in paragraph 16 were not raised at

7

all. (Inv. File I at 31-33.) Consequently, the court is of the opinion that plaintiff has failed to exhaust her administrative remedies as to these alleged discriminatory acts.

Plaintiff contends that these unexhausted claims are related to the allegations in her administrative complaint because they are all part of a continuing hostile work environment. (Pl.'s Brief at 8-10.) Specifically, she alleges that they are "part of the continuous environment and 'good ole boy' culture she struggled with." (Pl.'s Brief at 10.) The court, however, is of the opinion that these acts are not sufficiently related to allegations contained in the administrative complaint or this lawsuit to invoke the "continuing violation" theory. *See Roberts v. Gadsden Memorial Hospital*, 835 F. 2d 793, 799-801, *amended on rehearing*, 850 F.2d 1549 (11th Cir. 1988). Consequently, because the continuing violation theory does not apply, the claims in paragraphs 13, 14, and 16 of the Complaint are due to be dismissed.

C.     **Adverse Employment Actions**

Defendant moves for summary judgment on plaintiff's remaining discrete claims of gender discrimination (other than the denied opportunity to apply for the GS 14 branch chief position) on the grounds that they do not constitute adverse employment actions for purposes of Title VII. This case is brought pursuant to 42 U.S.C. § 2000e-16(a), which provides in relevant part:

> All **personnel actions** affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-16(a) (emphasis added).

8

In *Page v. Bolger*, the Fourth Circuit held that 42 U.S.C. § 2000e-16 prohibits only those personnel actions that can be characterized as ultimate employment decisions. The court stated:

> Disparate treatment theory as it has emerged in application of [Section 717 of] Title VII . . . has consistently focused on the question whether there has been discrimination in what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating. This is the general level of decision we think contemplated by the term 'personnel actions' in § 717. It is the level focused upon in the major Supreme Court decisions establishing and refining the substantive and procedural elements of individual disparate treatment theory. . . . By this, we suggest no general test for defining those 'ultimate employment decisions'. . . . By the same token, it is obvious to us that there are many interlocutory or mediate decisions having no immediate effect upon employment conditions which were not intended to fall within the direct proscriptions of § 717 . . . .

*Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981).

In the context of Title VII actions involving the private sector, the Eleventh Circuit has held that an employee claiming discrimination must "demonstrate that a reasonable person in his position would view the employment action in question as adverse." *Doe v. Dekalb Co. Sch. Dist.*, 145 F. 3d 1441, 1449 (11th Cir. 1998). The mere fact that an employee dislikes his or her employer's action is not sufficient to establish the element of adverse employment action required in employment discrimination cases. *Id.* Although alleged adverse actions need not cause "severe trauma" to support a discrimination claim, action that imposes "some *de minimis* inconvenience or alteration of responsibilities" is not enough. *Dekalb Co. Sch. Dist.*, 145 F. 3d at 1453.

In the context of Title VII retaliation claims, the Eleventh Circuit has held that Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of an

ultimate employment decision. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998) (private sector case brought under 42 U.S.C. § 2000e-3(a)).[4] Nevertheless, some "threshold level of substantiality . . . must be met" for unlawful discrimination to be cognizable under the anti-retaliation clause. *Wideman*, 141 F. 3d at 1456.

In this case, plaintiff alleges that she was criticized by management, (*id.* at ¶ 9); she was not allowed flex-time to work outside her office, (*id.* at first ¶ 10); she received less preferential assignments, (*id.* at second ¶ 10); she was required to submit performance evaluations with employee performance files, (*id.* at ¶ 11); the white male branch chief did not share pertinent information with her, (*id.* at ¶ 12); and she was required to regularly attend and complete Equal Employment Opportunity training, (*id.* at ¶ 15).

Plaintiff alleges no loss of pay, benefits, duties, or title as a result of these actions. *See Dekalb Co. Sch. Dist.*, 145 F. 3d at 1449-50 (collecting cases). Consequently, regardless of whether the court applies the standard from *Page*, *Dekalb Co. Sch. Dist.*, or *Wideman*, the court is of the opinion that plaintiff has not set forth sufficient evidence on which a reasonable jury could find that these are adverse employment actions for the purposes of discrete disparate treatment claims under Title VII.[5]

---

[4] In *Wideman*, however, the Eleventh Circuit specifically distinguished *Page*, noting that it involved 42 U.S.C. § 2000e-16, the federal sector provision, rather than § 2000e-3, the private sector retaliation provision. *Wideman*, 141 F. 3d at 1456 n. 2.

[5] The court has already found that two other allegations (that the branch chief discussed the plaintiff's performance with her group members outside of her presence, (Compl. ¶ 14), and that she suffered from unspecified "discriminatory employment actions and breaches of IRS policy, (*id.* at ¶ 16)) are due to be dismissed as untimely and unexhausted. Alternatively, the court is of the opinion that plaintiff has not presented sufficient evidence on which a reasonable jury could
(continued...)

10

### D. Grade 14 Branch Chief Position

Claims of discrimination under Title VII are governed by the familiar, tripartite framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. If the plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802.

If the defendant succeeds in carrying this burden, then the plaintiff must prove that the defendant's articulated reasons are a mere pretext for unlawful motives (*i.e.*, race discrimination or retaliation). *Burdine*, 450 U.S. at 253. A plaintiff's prima facie case coupled with sufficient evidence to allow a fact finder to disbelieve the employer's proffered explanation for its actions is enough to preclude entry of judgment as a matter of law. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997); *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997). At all times, the plaintiff bears the burden of persuasion on the ultimate question of whether defendant acted with an unlawful motive. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

Plaintiff may establish a prima facie case of promotion discrimination by proving that (1) she is a member of a protected minority; (2) she was qualified for and applied for the promotion; (3) she was rejected despite these qualifications; and (4) the position remained open or other

---

[5] (...continued)
find that these actions constitute adverse employment actions for purposes of § 2000e-16.

employees who were not members of the protected minority were promoted. *Walker v. Mortham*, 158 F. 3d 1177, 1186-87 (11th Cir. 1998); *see also Welborn v. Reynolds Metals Co.*, 810 F. 2d 1026, 1028 (11th Cir. 1987) (discrimination in hiring case).

In cases where the position is filled through informal or secretive means, a plaintiff's burden to establish a prima facie case changes. In *Carmichael v. Birmingham Saw Works,* the Eleventh Circuit stated:

> By showing that he applied, the plaintiff shows that the employer knew he was interested in the job. But when there is no formal notice of the job's availability, the plaintiff may have no means, within his own knowledge, of showing whether the employer considered him or not. Furthermore, when an employer uses such informal methods it has a duty to consider all those who might reasonably be interested, as well as those who have learned of the job opening and expressed interest.
>
> Accordingly, a plaintiff makes out a prima facie case . . . as long as he establishes that the company had some reason or duty to consider him for the post.

*Carmichael*, 738 F.2d 1126, 1133 (11th Cir. 1984).

In other words, the affirmative duty on an employer to consider non-applicants for a job opening, arises when the employer has provided "no formal notice of the job's availability." *Id.* Further, once such a duty arises, the employer must consider only "all those who might reasonably be interested." *Id.*

### 1. *Prima Facie Case*

In this case, plaintiff contends that she was not allowed to compete for the Grade 14 SPS Branch Chief position. (Compl. ¶ 8.) Inherent in the elements of the prima facie case is the presupposition that the "employer was seeking applicants" for the position at issue. *McDonnell*

12

*Douglas*, 411 U.S. at 802. If there is no vacant position, there can be no adverse employment decision. *Chavez v. Tempe High School*, 565 F. 2d 1087, 1091 (9th Cir. 1977) ("Necessarily, the failure to prove the existence of a job opening is a fatal defect in a prima facie case of overt discrimination.") (citing *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358, n. 44 (1977)).

In this case, the Grade 14 SPS Chief position was never vacant. According to Dietz, Owens remained in the position, receiving the upgrade to Grade 14. (Inv. File I. at 62.) Thus, the court is of the opinion that plaintiff has not set forth sufficient evidence on which a reasonable jury could find that the position at issue was one for which defendant was seeking applicants. Therefore, the court is of opinion that plaintiff cannot establish her prima facie case.

### 2. *Legitimate, Nondiscriminatory Reason*

Second, assuming that plaintiff could prove her prima facie case, defendant has proffered a legitimate, nondiscriminatory reason for keeping someone else in that position. As Dietz noted, in the IRS, "[i]t is an accepted and common personnel practice to upgrade the employee at the time the desk audit is done which upgrades the position." (*Id.*) Were Dietz to upgrade the position and then announce it vacant, "someone else could have been selected leaving the existing [SPS Chief] without a job." (*Id.*) "This would not be an acceptable personnel practice at any grade level." (*Id.*) Thus, defendant has met its burden in articulating a legitimate, nondiscriminatory reason for allowing Owens to remain in the upgraded position.
13

3.   *Pretext*

Plaintiff contends that because the MAP program certified only white males, including Owens, defendant's proffered reason is pretext for discrimination based on race and sex. (Pl.'s Brief at 13-14.) The court disagrees. First, the record shows that Owens's position was upgraded in June of 1994. (Inv. File II. at 584.) According to James, however, Owens was not MAP certified until after the program was revamped in November of 1994. (Inv. File I at 97.) Consequently, Owens's Map certification could not have affected the earlier position upgrade. Second, the court is of the opinion that selection of three white males for MAP certification, without more, is not sufficient evidence on which a reasonable jury could find that defendant's legitimate, nondiscriminatory reason was pretext for discrimination based on race or gender. Therefore, the court is of the opinion that summary judgment is due to be granted on plaintiff's claims relating to the August 1994 upgrade of the SPS Branch Chief position.

E.   **Hostile Work Environment**

To establish a prima facie case of hostile work environment, plaintiff must show: (1) that she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) that the harassment complained of was based on her protected class; and (4) that the harassment affected a term, condition, or privilege of her employment in that it was severe or pervasive enough to alter the conditions of her employment and create an abusive working environment. *Henson v. City of Dundee*, 682 F.2d 897, 903-04 (11th Cir. 1982).[6]

---

[6] The Eleventh Circuit has recognized that in establishing a gender-based harassment claim, plaintiff need not adduce proof of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature. *Bell v. Crackin Good Bakers, Inc.*, 777 F. 2d 1497, 1503

(continued...)

Establishing that harassing conduct was severe or pervasive enough to alter the conditions of employment contains an objective and a subjective component. *Mendoza v. Borden, Inc.*, 195 F. 3d 1238, 1246 (11th Cir. 1999). The employee must subjectively perceive the harassment to be so severe or pervasive as to alter the conditions of employment, "and this subjective perception must be objectively reasonable." *Id.* "Furthermore, 'the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

In analyzing the objective component, the court must consider four factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct interferes with the employee's job performance. *Id.* "The courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe and pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile working environment." *Id.* Title VII, however, "is not a federal 'civility code.'" *Id.* at 1245 (quoting *Oncale*, 523 U.S. at 81). "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations quotations omitted).

---

[6] (...continued)
(11th Cir. 1985). The plaintiff must instead show that the environment was generally hostile toward a particular gender. *Id.*

15

In this case, plaintiff alleges that she was continuously criticized by management for giving high performance ratings and for the performance of her group, (Compl. ¶ 9); she was not allowed flex-time to work outside her office, (*id.* at first ¶ 10); she received less preferential assignments than white male managers, (*id.* at second ¶ 10); she was required to submit performance evaluations with employee performance files, (*id.* at ¶ 11); the white male branch chief did not share pertinent information with her, (*id.* at ¶ 12); she was required to regularly attend and complete Equal Employment Opportunity training, (*id.* at ¶ 15); the branch chief discussed the plaintiff's performance with her group members outside of her presence (*id.* at ¶ 14) and she suffered from unspecified "discriminatory employment actions and breaches of IRS policy," (*id.* at ¶ 16).[7] Plaintiff alleges that these acts collectively constitute a hostile work environment. The court disagrees.

The court is of the opinion that a reasonable jury could not find these incidents, even if true, to be frequent, severe, humiliating, or physically threatening actions. Alternatively, the court is of the opinion that plaintiff has failed to set forth sufficient evidence on which a reasonable jury could find that these incidents were based on plaintiff's race or gender. Consequently, the court is of the opinion that summary judgment is due to be granted on plaintiff's hostile environment claims.

---

[7] The court notes that it has found two of these allegations to be untimely and unexhausted, but, for the sake of argument, will include them in the hostile environment claim.

## III. CONCLUSION

Based on the foregoing, the court is of the opinion that defendant's Motion for Summary Judgment filed by defendant is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 31st day of March, 2000.

*[signature]*
**SHARON LOVELACE BLACKBURN**
United States District Judge